## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

H & R BLOCK EASTERN
ENTERPRISES, INC.,          )
                            )
Plaintiff                   )
                            )
v.                          )          Case No. _____
                            )
MARTHA REYES,               )          VERIFIED COMPLAINT AND
                            )          REQUEST FOR INJUNCTIVE
Defendant.                  )          RELIEF

08 CV 01071

FEB 0 1 2008

Plaintiff H&R Block Eastern Enterprises, Inc. ("H&R Block" or "Plaintiff"), a Missouri corporation with its principal place of business at One H&R Block Way, Kansas City, Missouri 64105, for its Complaint against Defendant Martha Reyes ("Reyes" or "Defendant"), states as follows:

### INTRODUCTION

1.    H&R Block is engaged in the highly competitive business of providing tax preparation and related services to companies and individuals throughout the United States. In the tax preparation business, H&R Block has distinguished itself from its competitors by providing superior service to its customers and through its unique marketing and sales practices. H&R Block's methods of marketing its services and products, of providing its services and products, and its pricing structure and other information are kept highly confidential so that the company can remain competitive. In an effort to maintain the confidentiality of these trade secrets, H&R Block requires that all key personnel sign an agreement to keep such information confidential.

2.    H&R Block provides tax preparation services in the State of New York and throughout the United States.

3.     Defendant Reyes is a former tax preparer with H&R Block in the New York, New York area. Defendant is currently engaging in an improper and unfair scheme and campaign to violate her respective employment agreement with H&R Block by (1) misappropriating H&R Block's valuable confidential information and trade secret information, (2) soliciting with the intention of taking away H&R Block's clients for whom she serviced, and (3) directly competing with H&R Block for clients of H&R Block for whom she serviced. Defendant Reyes has undertaken this activity with the assistance of her new employer, Egan Wealth Group ("EWG"). Defendant has taken and will continue to take confidential information of H&R Block and induce H&R Block's clients to utilize the Defendant to prepare their taxes, in violation of her agreements with H&R Block.

## PARTIES

4.     Plaintiff, H&R Block, is a Missouri corporation with its principal place of business at One H&R Block Way, Kansas City, Missouri 64105.

5.     Upon information and belief, Defendant is a resident of the State of New York and resides at 125 W. 109th St., New York, New York 10025.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1332 (diversity of citizenship) since there is complete diversity among the parties and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7.     Venue is proper under 28 U.S.C. § 1391 (a) because defendant resides in the Southern District of New York and (b) a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this District.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

8.     H&R Block is in the business of providing tax preparation and related services to companies and individuals throughout the United States.

9.     H&R Block employs tax preparers each tax season, which runs from approximately November of one year through April of the following year.

10.    Tax preparers, such as Reyes, work for H&R Block under terms of a standardized written agreement.

11.    During the course and scope of her employment with H&R Block, Defendant was entrusted with confidential information and trade secrets of H&R Block with independent value to H&R Block and not generally known or ascertainable by H&R Block's competitors such as EWG.

12.    The confidential and trade secret information that Defendant obtained about H&R Block's business and methods of operating are critical to H&R Block maintaining its competitive position in the New York metropolitan area.  H&R Block would be at a substantial competitive disadvantage if the confidential and proprietary information known by Defendant were to fall into the hands of a competitor.

13.    The confidential information H&R Block provided to Defendant included, but was not limited to, strategic marketing and sales strategies and statistical data about H&R Block's performance in Manhattan and elsewhere; detailed and specific information about H&R Block's pricing strategies; company projections and forecasts; sales and competitive strategies; marketing strategies; growth strategies; employee/tax preparer compensation plans; efficient tax preparation programs and quality assurance strategies.   In addition, Defendant assisted in maintaining relationships with H&R Block's customers.

14. Despite the trust and confidence that H&R Block placed in Defendant, on information and belief, Defendant has surreptitiously developed and engaged in a campaign to unfairly and improperly compete with H&R Block by, among other actions, establishing and/or working for EWG to provide products and services in direct competition with H&R Block for clients of H&R Block which she serviced and soliciting current clients of H&R Block, in direct violation of Defendant's agreement with H&R Block.

15. On or about December 1, 2006, Plaintiff entered into an employment agreement ("Tax Preparer Agreement") with H&R Block, a copy of which is attached hereto as "Exhibit A."[1]

16. Paragraph eight (8) of the Tax Preparer Agreement reads in part:

During the term of this Agreement, [Reyes] will be given access to Trade Secrets and other Confidential Business Information of [H&R] Block which has commercial value to the Company and its affiliates (hereinafter together referred to as "Block"), the confidential nature of all such information is hereby acknowledged by [Reyes].....[Reyes agrees and acknowledges as follows:

b) Upon cessation of employment hereunder, [Reyes] shall promptly deliver to the Company the originals and all copies of Confidential Business Information and other materials and property of any nature belonging to Block.

c) "Confidential Business Information" means all information learned by [Reyes] as a consequence of [her] employment with the Company, including, but not limited to, Block's client lists, information pertaining to Block's clients, employee lists and information, and Block's tax preparation software. "Confidential Business Information", as used herein, does not include information in the public domain through authorized disclosure by Block or information that [Reyes] has received prior written authorization by Block to disclose or otherwise use.

d) The designation of any information as Confidential Business Information does not preclude it from also constituting a Trade Secret as defined by applicable law.

---

[1]H&R Block's hiring process begins with a letter directing its new hires to access the company's online Applicant Hiring Process ("AHP") website, where the new hires complete all forms and review and electronically sign their employment agreement. Reyes received an offer letter on October 30, 2006, which directed her to access the AHP system. Reyes electronically signed the Tax Preparer Agreement on November 2, 2006. The resulting agreement is available to Reyes during her employment at H&R Block.

[Reyes] is prohibited from using, disclosing, or misappropriating Trade Secrets of Block at all times during and after [Reyes's] employment for so long as such information remains a Trade Secret. Trade Secrets include, among other things, Block's client lists and all information pertaining to Block's clients.

17.    Paragraph ten (10) of the Tax Preparer Agreement provides, in part, that

for two (2) years following the cessation of [Reyes's] employment hereunder for any reason ("the Restricted Period"), [Reyes] shall not, directly or indirectly: (1) Provide any of the following services to any Company Client: (i) preparation of tax returns; (ii) electronic filing of file tax returns; or (iii) any Alternative Products or Services; or (2) Solicit Company Clients for the purpose of offering to such clients: (i) tax return preparation services; (ii) electronic filing of tax returns; or (iii) any Alternative Products or Services.

18.    Paragraph ten (10) of the Tax Preparer Agreement defines "Company Clients" as

every person or entity whose federal or state tax return was prepared or electronically transmitted by [Reyes], or for whom [Reyes] provided any Alternative Products or Services, during the term of this Agreement or during any period of time in which [Reyes] was employed by the Company or an affiliate during the twelve (12) months immediately preceding the effective date of this Agreement.

19.    Paragraph ten (10) of the Tax Preparer Agreement defines "Alternative Products or Services" as "products or services, other than the preparation or electronic filing of tax returns, that the Company provides to clients within [Reyes's] district of employment...."

20.    Defendant's employment with H&R Block ended on or about August 4, 2007.

21.    Upon information and belief, Reyes is a tax preparer for EWG. According to its website, EWG is financial and tax advisory firm located in New York City, and among the services EWG offers its clients are tax planning and preparation. See Copies of EWG web pages, attached hereto as Exhibit B. Consequently, EWG is in direct competition with H&R Block.

22.    Upon information and belief, Defendant, as an employee of EWG, has performed, or is attempting to perform, tax preparation services for H&R Block customers for whom she had prepared returns during her employment with H&R Block. Her agreement does not seek to prevent

her competition with H&R Block, but, inter alia, to prevent the solicitation and servicing of those clients of H&R Block with whom she serviced.

23.     Defendant is soliciting customers of H&R Block whom she serviced, in direct violation of her Tax Preparer Agreement with H&R Block.

24.     As but one example, Defendant recently sent John/Jane Doe,[2] a current H&R Block customer whose tax return Reyes prepared in 2007 while she was employed by H&R Block, a postcard through the United States mails.  The postcard, a copy of which is annexed hereto as Exhibit C, reads:

> I am excited to let you know that this tax season, I will be at a new firm and at a new location – Egan Wealth Group, LLC on 8th Avenue between 34-35th, Ste 815 (in the New Yorker Hotel).  I will be able to offer you all the same services and products (such as RACS and RALS) and additional services as well.  To make a tax prep appointment call me at 212.244.2720 (or on my cell at 646.684.1804).  My email is Martha.Reyes@eganwealthgroup.com.  I am looking forward to helping you again this year!  Se habla espanol. – Martha Reyes.

25.     Several H&R Block customers whose 2006 tax returns defendant prepared in 2007 and/or whose tax returns defendant electronically transmitted in 2007 have advised H&R Block that they are not having their 2007 tax returns prepared by H&R Block in 2008 but would be using the services of defendant at her new employer.

26.     Upon information and belief, and in direct violation of her Tax Preparer Agreement with Plaintiff, Defendant has prepared and/or electronically filed tax returns for Plaintiff's customers whom Defendant served while at H&R Block.

### COUNT I
### (Breach of Contract)

27.     H&R Block incorporates all previous paragraphs as though fully set forth herein.

---

[2]To protect the identity of this H&R Block customer, H&R Block refers to him/her as "John/Jane Doe" in this Complaint.

28.    The Tax Preparer Agreement entered into by Plaintiff and Defendant is a valid and enforceable contract.

29.    H&R Block has complied with all of its obligations as set forth in the Tax Preparer Agreement.

30.    Defendant has failed to perform her obligations under the Tax Preparer Agreement with H&R Block in that she has solicited, and upon information and belief continues to solicit, clients of H&R Block whom she serviced while employed by H&R Block, for the purpose of offering to such clients tax return preparation services and/or electronic filing of tax return.

31.    Defendant has failed to perform her obligations under the Tax Preparer Agreement with H&R Block in that she is, upon information and belief, currently providing tax preparation services and/or electronically filing tax returns on behalf of H&R Block customers whom she serviced while employed by H&R Block.

32.    As a result of the foregoing, Reyes has materially breached the Tax Preparer Agreement.

33.    H&R Block has suffered damages as a direct result of Defendant's breach, including damages to its business expectancies and goodwill, and other damages, in an amount substantively exceeding $75,000.00 to be determined at trial.

34.    Paragraph 12 of the Tax Preparer Agreement further provides that in the event of such a breach, Defendant shall pay H&R Block all court costs, reasonable attorney's fees, and expenses incurred in enforcing the Tax Preparer Agreement.

## COUNT II
### (Unfair Competition)

35.    H&R Block incorporates all previous paragraphs as though fully set forth herein.

36.    Defendant's use of confidential and proprietary information to compete directly against H&R Block constitutes unfair competition.

37.    The conduct of Defendant, as described more fully herein, including soliciting company clients, constitutes unfair competition.

38.    Defendant has misappropriated and exploited confidential information belong to H&R Block in breach of a relationship of trust.

39.    The confidential information Defendant obtained from H&R Block, by virtue of her position of trust, places H&R Block at a competitive disadvantage if used by Defendant in the manner that she plans and is intending to use to compete against H&R Block.

40.    Without knowledge of H&R Block's confidential information and trade secrets, Defendant is not able to as meaningfully and effectively operate in New York City.

41.    H&R Block has been harmed by Defendant's unfair competition by, including but not limited to, the loss and threatened continued disclosures of trade secrets and confidential, proprietary information and damage to H&R Block's good will.

42.    The acts of Defendant have been willful and malicious or, at the very least, in conscious disregard to the rights of H&R Block, thereby entitling it to an award of punitive damages.

## COUNT III
### (Misappropriation of Trade Secrets)

43.    H&R Block incorporates all previous paragraphs as though fully set forth herein.

44.    Defendant possesses, and upon information and belief, has obtained and continues to possess H&R Block's confidential and proprietary business information and trade secrets, including but not limited to customer lists, pricing information and methodologies.

45.    The confidential and proprietary business information of H&R Block derives independent economic value, actual or potential, from not being generally known and not being

readily ascertainable by proper means by other persons who can obtain economic value from their disclosure and are trade secrets belonging to H&R Block, within the meaning of Missouri and New York law.

46.     H&R Block uses reasonable efforts to maintain the secrecy of its confidential and proprietary business information and trade secrets.

47.     By obtaining, possessing, and using the confidential information, Defendant has misappropriated and unlawfully used H&R Block's trade secrets and confidential information.

48.     Defendant's conduct is in violation of Missouri and New York law.

49.     H&R Block has been damaged by defendant's misappropriation and unlawful use of its trade secrets and confidential information in an amount to be determined at trial.

### COUNT IV
### (Tortious Interference with Prospective Business Relationship)

50.     H&R Block incorporates all previous paragraphs as though fully set forth herein.

51.     H&R Block had a business relationship with its clients and a reasonable expectation to maintain its relationships from year to year.

52.     Defendant has knowledge of H&R Block's relationships with its clients.

53.     Upon information and belief, Defendant has solicited, and continues to solicit, H&R Block's clients wrongfully intending that the clients terminate their relationships with H&R Block and enter into a relationship with Defendant for tax preparation services.

54.     Defendant has intentionally and without justification or privilege interfered with and disrupted H&R Block's business relationships with its clients.

55.     Defendant acted with malice and used wrongful means.

56.    Because of Defendant's wrongful actions, H&R Block has lost revenue from tax preparation and damage to its business relationships and goodwill and other damages in an amount to be determined at trial.

## COUNT V
### (Request for Injunctive Relief)

57.    H&R Block incorporates all previous paragraphs as though fully set forth herein.

58.    H&R Block, in an effort to mitigate its damages and preserve the status quo before a hearing of this cause on the merits, seeks this Court's order enjoining Defendant (a) from violating the terms of her Tax Preparer's Agreement, (b) from using and disclosing confidential and trade secrets of H&R Block, including strategic marketing and sales strategies and statistical data about H&R Block's performance in New York, New York and elsewhere, detailed and specific information about H&R Block's pricing strategies, company projections and forecasts, sales and competitive strategies, marketing strategies, growth strategies, employee/tax preparer compensation plans, efficient tax preparation programs and quality assurance strategies; (c) requiring Defendant to return the trade secrets and confidential information of H&R Block that she possesses; (d) from competing with H&R Block by preparing tax returns, electronically filing tax returns, or providing Alternative Products and Services for persons or entities in violation of the Tax Preparer Agreement for the period agreed to and within the limitations as provided by the Tax Preparer Agreement; and (e) for competing with H&R Block by soliciting persons or entities in violation of the Tax Preparer Agreement for the period agreed to and within the limitations as provided by the Tax Preparer Agreement.

59.    There is no adequate remedy at law to prevent Defendant's wrongful conduct while this litigation is pending, nor is there an adequate remedy at law to compensate H&R Block for the damage to its business.

60.    There is a substantial likelihood that H&R Block will prevail on the merits of this case.

61.    There is a substantial likelihood that H&R Block will continue to suffer irreparable injury if the injunction is not granted and that the threatened injury to H&R Block outweighs any potential injury to Defendant.

62.    The Court's granting of this injunction will serve the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff H&R Block prays for relief as follows:

For a temporary restraining order, preliminary injunction and permanent injunctive relief, restraining Defendant and those in active concert or participating with her as follows: (a) from using and disclosing confidential and trade secrets of H&R Block, including strategic marketing and sales strategies and statistical data about H&R Block's performance in the New York, New York area and elsewhere, detailed and specific information about H&R Block's pricing strategies, company projections and forecasts, sales and competitive strategies, marketing strategies, growth strategies, employee/tax preparer compensation plans, efficient tax preparation programs and quality assurance strategies; (b) requiring Defendant to return the trade secrets and confidential information of H&R Block that she possesses; (c) from competing with H&R Block by preparing tax returns, electronically filing tax returns, or providing Alternative Products and Services for persons or entities in violation of the Tax Preparer Agreement for the period agreed to and within the limitations as provided by the Tax Preparer Agreement; and (d) from competing with H&R Block by soliciting persons or entities in violation of the Tax Preparer Agreement for the period agreed to and within the limitations as provided by the Tax Preparer Agreement.

(1)    For an order placing a constructive trust on all compensation received by Defendant through the unlawful conduct outlined above;

(2)    Awarding actual compensatory and consequential damages from Defendant in an amount to be proven at trial;

(3)    Awarding H&R Block punitive damages for willful and intentional misappropriation of confidential and proprietary business information and trade secrets;

(4)    Awarding H&R Block its attorney's fees and expenses, and its costs of this action; and

(5)    Awarding such other relief as the Court deems just and proper.

Dated:   February 1, 2008
         New York, New York

Respectfully submitted,

Steven Gerber
David H. Ganz
Adorno & Yoss LLP
1040 Avenue of the Americas
Suite 1101
New York, New York 10018
(973) 256-9000 Telephone
(973) 256-9001 Facsimile

David M. Kight
Chad Beaver
Spencer Fane Britt & Browne LLP
1000 Walnut – Suite 1400
Kansas City, Missouri 64106
(816) 292-8303 Telephone
(816) 474-3216 Facsimile
dkight@spencerfane.com

Attorneys for Plaintiff H&R Block Eastern Enterprises, Inc.

## VERIFICATION

STATE OF  NEW JERSEY   )
                       ) ss.
COUNTY OF PASSAIC         )

    David Vanek, being duly sworn on his oath, states that he is a District Manager for H&R Block Eastern Enterprises, Inc., that he has read the foregoing Verified Complaint, and that the statements contained therein are true and accurate to the best of his knowledge unless otherwise stated.

_____

    Subscribed and sworn to before me this 1st day of February, 2008:

_____
NOTARY PUBLIC

           TRACY A. VONSTAMWITZ
         Notary Public of New Jersey
    My Commission Expires Sept. 20, 2010

My Commission Expires:

SEPT. 20 2010

Exhibit "A"



**H&R BLOCK®**

## TAX PROFESSIONAL EMPLOYMENT AGREEMENT

This Agreement is made between _____Martha Reyes_____ of _____125 West 109th st._____

(Name)                                                    (Number & Street or Box No.)

___New York___, ___NY___ ___10025___ ("Associate"), and ___H&R Block Eastern Enterprises___,

(City)            (State)        (Zip )

a Missouri corporation ("the Company"). These parties, in consideration of the covenants and agreements set forth below, agree as follows:

**1. Employment.**

The Company employs Associate as a ___Office Coordinator___ in the Company's ___MANHATTAN #01, NY.___ District, Admin. ID# ___29516___, for the period and upon the terms and conditions herein contained. Associate hereby accepts such employment and agrees to comply with such terms and conditions.

**2. Term.**

The term of this Agreement begins on the earlier of the following dates: the date Associate first attends Skills for Success training; the date Associate attends other paid training regarding any new Company product(s) that will be offered prior to the beginning of Tax Season; or December 1, 2006. The term of this Agreement shall end on ___April 17, 2007___, except the Company may extend the term of this Agreement by one day for those parts of the country impacted by Patriot's Day. Furthermore, if the Agreement end date stated above is prior to the end of Tax Season, the Company, at its sole discretion, may ask Associate to remain employed and to continue performing duties, as specified in Section 3, below, through the end of Tax Season. If Associate continues to perform such duties, the terms of this Agreement will continue in full force and effect through the end of Tax Season. For purposes of this Agreement, "Tax Season" means the period from January 1 through April 15 next (or the last day on which individual income tax returns, without an extension, must be filed if such day is not April 15 next).

**3. Duties.**

Associate's duties consist of attending mandatory policy and procedure training, preparing accurate tax returns and offering electronic filing of returns to qualifying taxpayers, promoting and providing additional or alternative products or services which the Company or its affiliates may offer, providing other information to clients that may be relevant to their tax and financial situation, and performing other duties as assigned, all in accordance with the law and the Company's policies and procedures, including the H&R Block, Inc. Code of Business Ethics & Conduct. Associate acknowledges that it is outside the scope of Associate's employment hereunder and is against the rules of the Company for Associate to offer any financial advice for which a license is required.

**4. Compensation.**

The Company shall pay Associate an hourly rate of pay, the amount of which shall be determined by the labor code assigned by the Company to a specific project or task. Different projects or tasks are assigned different pay rates and the Company reserves the right to revise such rates at any time. Under no circumstance shall the hourly rate for any work performed be less than the federal or applicable state minimum wage. Associate shall be paid overtime in accordance with federal and applicable state wage and hour laws.

**5. Withholdings and Offsets.**

The Company shall withhold from all compensation payable to Associate all required federal, state, and local taxes. Associate agrees that if Associate fails to turn over all funds of the Company as required by Company policy, or becomes indebted to the Company in any manner whatsoever, the Company may offset the amount of any such funds or indebtedness against any compensation due Associate.

**6. Hours.**

Associate's hours of employment will be as from time to time designated by the Company. Associate understands the seasonal nature and fluctuation of the Company's business and acknowledges the Company's exclusive right to reduce or increase Associate's hours of employment based on business needs. Associate hereby expressly acknowledges and agrees to abide by the Company's wage and hour policies.

**7. Termination.**

Notwithstanding the above-described Term, the Company may discharge Associate and terminate this Agreement without notice upon a determination by the Company that Cause exists for such termination. For purposes of this Agreement, "Cause" shall mean unsatisfactory performance as determined by the Company, violation of any term of this Agreement or Associate's stated intention to violate any term of this Agreement, conviction of or plea of guilty or no contest to a crime of dishonesty or theft during or prior to Associate's employment (subject to state law), misrepresentation on the employment application or in this Agreement, fraud or theft, material violation of Company policies including the H&R Block, Inc. Code of Business Ethics & Conduct, and other willful misconduct by Associate. "Cause" shall also include: (i) Associate's violation of any term of any prior employment agreement between Associate and the Company, (ii) fraud or theft by Associate during any prior period of employment with the Company, and (iii) material violation of any Company policy, including the H&R Block, Inc. Code of Business Ethics & Conduct, by Associate during any prior period of employment with the Company.

**8. Confidential Information.**

During the term of this Agreement, Associate will be given access to Trade Secrets and other Confidential Business Information of Block which has commercial value to the Company and its affiliates (hereinafter together referred to as "Block"), the confidential nature of all such information is hereby acknowledged by Associate. In consideration for the Company providing such access, and as a material term of this Agreement, Associate gives the Company the covenants contained in Sections 8, 9, 10, and 11 of this Agreement. Associate agrees and acknowledges as follows:

a) Without the Company's prior written authorization, Associate shall not, directly or indirectly: (i) misappropriate, make copies of, or remove from Block's offices any Confidential Business Information of Block, (ii) make known, divulge, or communicate to any person or entity any Confidential Business Information of Block, or (iii) use any Confidential Business Information of Block for any reason other than as necessary to enable Associate to properly perform Associate's duties hereunder.

b) Upon cessation of employment hereunder, Associate shall promptly deliver to the Company the originals and all copies of Confidential Business Information and other materials and property of any nature belonging to Block.

c) "Confidential Business Information" means all information learned by Associate as a consequence of Associate's employment with the Company, including, but not limited to, Block's client lists, information pertaining to Block's clients, employee lists and information, and Block's tax preparation software. "Confidential Business Information", as used herein, does not include information in the public domain through authorized disclosure by Block or information that Associate has received prior written authorization by Block to disclose or otherwise use.

d) The designation of any information as Confidential Business Information does not preclude it from also constituting a Trade Secret as defined by applicable law.  Associate is prohibited from using, disclosing, or misappropriating Trade Secrets of Block at all times during and after Associate's employment for so long as such information remains a Trade Secret.  Trade Secrets include, among other things, Block's client lists and all information pertaining to Block's clients.

e) Information shall not be deemed to have lost its status as a Trade Secret or Confidential Business Information as the result of any unauthorized disclosure by Associate or any third party.

f) Section 7216 of the Internal Revenue Code of 1986, as amended, prohibits the unauthorized use and/or disclosure of confidential tax return information of the Company's clients, and Associate agrees that Associate will not at any time disclose or use such information in violation thereof.

## 9. Extent of Services.

Associate agrees that during the term of Associate's employment Associate shall not, directly or indirectly:

a) compete with the Company at any location or in any capacity by preparing tax returns, by filing tax returns electronically, or by providing any other product or service that the Company offers in the Associate's district of employment (for example, bookkeeping if provided in the district);

b) solicit or accept any of the Company's clients for the aforementioned services; or

c) be an Electronic Return Originator ("ERO") with the IRS.

Associate agrees and accepts as a condition of employment that during the term of Associate's employment all tax returns Associate prepares, including any returns Associate prepares for friends and family, but excluding Associate's own return, must be processed through the Company in accordance with Company policies and procedures as returns prepared by the Company.  Associate may prepare and electronically file Associate's own tax return free of charge. For associates employed within the State of Texas, for purposes of this Section 9, "Company" means both HRB Texas Enterprises, Inc. and H&R Block and Associates, L.P.

Associate shall not be in violation of Section 9(a) if providing the prohibited services for an H&R Block franchise.

## 10. Post-Termination Covenants.

a) Associate covenants that for two (2) years following the cessation of Associate's employment hereunder for any reason (the "Restricted Period"), Associate shall not, directly or indirectly:

(1) Provide any of the following services to any Company Client: (i) preparation of tax returns; (ii) electronic filing of file tax returns; or (iii) any Alternative Products or Services; or

(2) Solicit Company Clients for the purpose of offering to such clients: (i) tax return preparation services; (ii) electronic filing of tax returns; or (iii) any Alternative Products or Services.

b) Associate agrees that the Restricted Period for each of the above covenants shall be tolled during (i) any period(s) of violation that occur during the original Restricted Period; and (ii) any period(s) of time required by litigation to enforce the covenant (other than any periods during which Associate is enjoined from engaging in the prohibited activity and is in compliance with such order of enjoinment) provided that the litigation is filed within one year following the end of the original Restricted Period.

c) For purposes of this Section 10, "Company Clients" is defined as every person or entity whose federal or state tax return was prepared or electronically transmitted by Associate, or for whom Associate provided any Alternative Products or Services, during the term of this Agreement or during any period of time in which Associate was employed by the Company or an affiliate during the twelve (12) months immediately preceding the effective date of this Agreement.

d) For purposes of this Section 10, "Alternative Products or Services" means products or services, other than the preparation or electronic filing of tax returns, that the Company provides to clients within Associate's district of employment (for example, bookkeeping if provided in such district).

e) For associates employed within the State of Texas, for purposes of this Section 10, "Company" means both HRB Texas Enterprises, Inc. and H&R Block and Associates, L.P.

f) In the event a Court of competent jurisdiction finds the time period, geographic scope, scope of activity, or any definition contained in this Section 10 to be overly broad, the time period, geographic scope, scope of activity, or definition the Court deems reasonable shall be substituted for the language in this Agreement.

g) Associate shall not be in violation of Section 10(a)(1) if providing the prohibited services for an H&R Block franchise.

h) Sections 10(a) and (b) are not applicable to associates employed in the state of North Dakota.

## 11. Nonsolicitation of Employees.

Associate covenants that during Associate's employment hereunder and for one (1) year following the cessation of such employment for any reason, Associate shall not, directly or indirectly, solicit or hire Company Employees to work in any business that provides any product or services in competition with the Company. For purposes of this Agreement, "Company Employees" mean persons employed by the Company at the time of the solicitation or hiring or at any time during the term of this Agreement.

Section 11 is not applicable to associates employed in the state of Wisconsin.

**12. Remedies.**

The parties agree that if any provision of Section 8, 9, 10, or 11 is violated, the Company will have no adequate remedy at law and will suffer irreparable loss and damage.  The parties further agree that in the event of any such breach or violation, whether threatened or actual, the Company shall be entitled to injunctive relief to prohibit or restrain such breach or violation in addition to all other remedies available at law or equity.  Associate agrees that no bond need be filed in connection with any request by the Company for a temporary restraining order or other injunctive relief.  In addition to injunctive relief, Associate acknowledges that the Company is entitled to damages for any breach of Section 8, 9, 10, or 11.  Further, in the event of such breach or violation, Associate shall pay the Company all court costs, reasonable attorneys' fees, and expenses incurred by the Company in enforcing this Agreement.  Further, Associate acknowledges that damages for breach of Section 9, are difficult, if not impossible, to establish and Associate therefore agrees to liquidated damages as set forth below.  Associate acknowledges and agrees that these sums are a reasonable forecast of the harm caused by the breach in light of the anticipated or actual loss caused by a breach and the difficulties of proof of loss.  Associate agrees that this liquidated damages provision shall not be construed as a payment to avoid Associate's obligations under Section 8, 9, 10, or 11 hereof and further agrees that the Company shall be entitled to injunctive relief in addition to enforcement of this liquidated damages provision.

In the event Associate breaches Section 9 of this Agreement, Associate shall pay to Company a lump sum of $1,000 per tax season of employment up to a $10,000 maximum (a partial tax season shall be counted as a tax season).

**13. Agreement Regarding H&R Block Bank's and HSBC Bank's Products and Services.**

Associate agrees to comply with the following conditions in offering H&R Block Bank's Easy Savings, Easy IRA and Emerald Prepaid MasterCard® and in offering Refund Anticipation Loans, Refund Anticipation Checks and other settlement products of HSBC Bank USA, N.A. or its affiliates ("HSBC").  Associate will comply with all H&R Block Operating Policies and Procedures and required training related to the above products prior to conducting any marketing, solicitation, or customer service activities.  Associate acknowledges that H&R Block Bank and HSBC have the right to monitor, review and audit activities Associate performs in connection with such entities' respective products and services.  Associate acknowledges that H&R Block Bank's regulator (the Office of Thrift Supervision) has the authority to regulate, examine and take enforcement action against H&R Block and H&R Block Bank with respect to the activities performed in connection with H&R Block Bank's products or services and Associate acknowledges that HSBC's regulator (the Office of the Comptroller of the Currency) has the authority to regulate, examine and take enforcement action against H&R Block and HSBC with respect to the activities performed in connection with HSBC's products or services.

**14. Survival; Assignability.**

The parties agree that the covenants and agreements contained in Sections 8 through 19 shall survive the termination of this Agreement.  This Agreement is assignable by the Company to any other party without notice to, or consent, or approval by Associate.  Associate shall not assign this Agreement.  This Agreement shall inure to the benefit of the successors and assigns of the Company.

**15. Representations of Associate.**

a) Associate represents that Associate has never had a Form 8633 (Application to Participate in the Electronic Filing Program) denied by the Internal Revenue Service and has never been suspended or rejected from such program prior to this Agreement.  Associate further represents that Associate has not currently applied for or been accepted as an Electronic Filer other than by virtue of any application made through or on behalf of the Company.

b) Associate represents that all statements made on Associate's employment application, including those regarding Associate's criminal background, are true and accurate.

c) Associate represents that Associate is not subject to any contract that would prohibit Associate from performing his/her duties hereunder.

**16. Choice of Law.**

Associate acknowledges that the Company headquarters is located in the State of Missouri and that this Agreement shall be governed by the laws of the State of Missouri without reference to its conflict of law principles.

**17. Waiver.**

Associate agrees that Company's failure to require strict compliance with any term, condition, or covenant contained in this Agreement at any time shall not be deemed a waiver of that or any other term, condition, or covenant contained in this Agreement.

**18. Waiver of Jury Trial.**

**The Company and Associate hereby waive trial by jury of any dispute arising out of or related to Section 8, 9, 10, 11, or 12 of this Agreement.**

**19. Entire Agreement.**

The foregoing is the entire Agreement between the parties as to the terms and conditions of Associate's employment, and no amendment of this Agreement will be effective unless in writing and signed by the parties.  If any provision of this Agreement is invalid or unenforceable, such provision will be deemed to be severed and deleted, and the remainder of the Agreement will remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

H&R Block Eastern Enterprises
Company Name

District Manager

Associate

Print Name

Martha  Reyes
Print Name

2402 Tax Professional
8/23/2006
Page 3

Exhibit "B"

# Egan Wealth Group, LLC

Plan Your Future - Manage Your Present

Home          Services          About Us          Contact

## Welcome

Egan Wealth Group is a boutique financial and tax advisory firm located in Midtown Manhattan. Our clients include small businesses as well as individuals, and we welcome the chance to serve new clients. Please contact us to discuss your individual situation. We pride ourselves on our outstanding customer service.

2007 copyright, Egan Wealth Group, LLC.  All rights reserved.

# Egan Wealth Group, LLC

Plan Your Future - Manage Your Present

Home          Services          About Us          Contact

## Services for Businesses and Individals

- Financial Planning

- Asset Management

- Tax Planning and Preparation

- Bookkeeping

- Retirement Planning and Plan Set-up

- Insurance Planning

2007 copyright, Egan Wealth Group, LLC.  All rights reserved.

Exhibit "C"



Egan Wealth Group
Plan your future · Manage your present

See you Soon!
Martha Reyes

NEW YORK, NY



I am excited to let you know that this tax season I will be at a new firm and at a new location – Egan Wealth Group, LLC on 8th Avenue between 34-35th, Ste 815 (in the New Yorker Hotel). I will be able to offer you all the same services and products (such as RACS and RALS) and additional services as well. To make a tax prep appointment call me at 212.244.2720 (or on my cell at 646.694.1804). My email is Martha.Reyes@eganwealthgroup.com. I am looking forward to helping you again this year! Se habla espanol. - Martha Reyes.



**Egan Wealth Group** llc

Plan your future • Manage your present llc

481 Eighth Avenue, Suite 815 • New York, NY 10001

Office: 212-244-2720
Fax: 212-244-2721
Web: www.eganwealthgroup.com